**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Amanda Jackson | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO: |
| City of New York, Kings | ) | COMPLAINT |
| County District Attorney's | ) | |
| Office, John Does 1 – 8 | ) | JURY TRIAL DEMAND |
| Defendants. | ) | |

_____

**PRELIMINARY STATEMENT**

1.      Amanda Jackson brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his rights under the Constitution of the United States of America and the New York State Constitution.

**JURISDICTION AND VENUE**

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth , Eighth, and Fourteenth Amendments to the United States Constitution, as well as the New York State Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) because Ms. Jackson's claims arise under law of the United States and seek redress of the deprivation under color of state law of rights guaranteed by the United States Constitution.

1

3.      Venue lies in the Eastern District of New York under 28 U.S.C.§ 1391(b)(2)

because a substantial part of the events giving rise to Plaintiff's claim occurred in the District.

**THE PARTIES**

4.      Plaintiff Amanda Jackson is a resident of Kings County – Brooklyn, New York.

5.      Defendant City of New York is a municipal corporation organized under the

laws of the State of New York.  It operates the New York City Police Department ("NYPD"),

a department or agency of defendant City of New York responsible for the appointment,

training, supervision, promotion and discipline of correction officers and supervisory

correction officers, including the individually named defendants herein.

6.      Defendant Kings County District Attorney's office has the exclusive

jurisdiction to prosecute city and state criminal violations in Kings County.  They are

responsible for appointment, training, supervision, promotion, and discipline of prosecutors

under its command and work in conjunction with the City of New York and New York

Police Department.

7.      Police Officer John Doe 1-8 – full name fictitious because it is unknown -

("John Does") was at all times relevant to this Complaint a duly appointed and acting

employee of the City of New York and the NYPD, acting under color of law and in her

individual capacity within the scope of employment pursuant to the statutes, ordinances,

regulations, policies, customs, and usage of the City of New York and the NYPD.  They are

sued in their individual capacity.

**JURY DEMAND**

2

8.      Plaintiff demands a jury trial.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

### The Robbery & Homicide At 181 Hegeman

9.      Plaintiff's father operated a popular gambling location in Brownsville,

Brooklyn at 181 Hegeman.

10.      On or about October 7, 2020, multiple individuals attempt to rob the patrons

at the location.

11.      Ultimately, the robbery perpetrators initiate a shootout that results in one

person being murdered and three other individuals suffering gunshot injuries.

### The NYPD Investigates The Homicide, Identifies Plaintiff As A Potential Witness, & Fabricates A Statement From Her

12.      At some time, the NYPD became aware that Plaintiff observed the

perpetrators enter the establishment.

13.      Initially, Plaintiff attempted to cooperate and work with law enforcement.

Plaintiff's sister gave them a DVR containing the surveillance footage and Plaintiff spoke

with officers about the incident.

14.      Then, Plaintiff became aware that the NYPD had compiled a statement that

they said came from her.  Plaintiff's review of the statement indicated that the NYPD had

knowingly and intentionally falsely attributed statements to her that she never said.

15.      Plaintiff also indicated to the investigating officers that she did not want to

testify due to fears for her safety, she also told a district attorney from the Kings DA.

3

**Plaintiff is Taken Into Custody At Gunpoint & Forced To Testify**

16.     In January of 2023, Officers came into her home, where she was sleeping with her baby father and four children, with guns drawn.

17.     First, they pointed the gun at the father of her children.  Then, they pointed the gun at her face as well.

18.     The NYPD officers told her that she was under arrest, and then, after placing her under arrest, they took her to a precinct in Manhattan.  At the precinct they informed her that she was there pursuant to a subpoena to testify at the grand jury.

19.     She remained in custody for five to six hours at the precinct, after it taking approximately two to three hours to arrive at the precinct.  During the entire time in custody, Plaintiff was in handcuffs.

20.     Eventually, Plaintiff was taken to Kings County Supreme Court to testify in front of the Grand Jury.

21.     Prior to testifying, in a meeting with the ADA, she was threatened that she would be incarcerated if she did not testify.

22.     The ADA also informed her that she must testify to what was on the paper that had been fabricated by the NYPD.  Though the ADA was not aware that the NYPD had fabricated the statement, Plaintiff did inform him that the statement was not entirely accurate.

23.     The ADA also informed Plaintiff that the Kings County DA found out about her pending ACS case, and that they would grant her immunity for that claim as well for the

4

instant incident.  Plaintiff responded that she did not need immunity as she did not have

any involvement in the incident.

24.      Despite her reservations, Plaintiff ultimately agreed to testify in front of the

Grand Jury.

**Plaintiff Is Assaulted BY NYPD Officers After Giving The "Wrong" Answers To The Grand Jury**

25.      During giving testimony to the grand jury, Plaintiff was asked to step out of

the Grand Jury and speak to the ADA privately.

26.      During this conversation, approximately two other police officers were

present.  The ADA again threatened Plaintiff will jail time due to not testifying in the

manner he desired.

27.      After not receiving the desired response, the ADA told the police officers to

arrest her.  This second arrest resulted in a panic attack, where Plaintiff started

hyperventilating.

28.      Despite not resisting in any manner, the officers came to her side, grabbed her

from the side, and slammed her to the floor.

29.      With Plaintiff in tears, the officers unnecessarily and without justification

placed a knee on her back.

30.      Plaintiff told the officers that she could not breathe and started hyper-

ventilating while she was on the floor.

31.      Plaintiff was eventually released after being told by a judge that she cannot be

incarcerated for not testifying.

32.     Though she informed the officers that she needed medical attention, the officers refused and told her that she would have to call the ambulance herself.

33.     None of the aforementioned acts  were protected by legal privilege, nor were such acts legally justified. Said occurrence and the injuries and damages sustained by Plaintiff were due solely to the negligence, carelessness, recklessness and willful misconduct of the CITY OF NEW YORK, its agents, servants and/or employees.

34.     As a result of the defendants' conduct, plaintiff has been caused to suffer, *inter alia*, severe anxiety, humiliation, and embarrassment, damage to personal reputation, physical injury, apprehension, , emotional and psychological trauma, loss of income, and violation of rights under the New York Constitutions, and applicable statutory and case law.

## CLAIMS FOR RELIEF

### Claim I: Monell Claim Under 42 U.S.C. § 1983
*Against City of New York*

### The City Of New York Has A De Facto Policy Of Deliberate Indifference To The Excessive Use of Force By Members of The NYPD

35.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

36.     The assault against Ms. Jackson by NYPD Officers cannot be considered an isolated incident.  It is due to the deliberate indifference by the City of New York against the culture of violence and perpetual use of excessive force by members of the NYPD.  This culture, that has been documented for at least the last twenty years, involves thousands of incidents of excessive force by NYPD officers that does not result in punishment, and, if

punishment is suggested by the CCRB, those suggestions consistently overruled by NYPD's

Commissioner.

37.    The NYPD has documented 38,455 use of force incidents since 2020[1],

including 6,042 incidents in 2024 alone.[2]   Since 2020, the CCRB has received 22,806

complaints for excessive use of force by members of the NYPD[3], including 4,067 complaints

this year alone.[4]

38.    A review of the number of complaints against the total number of incidents

indicates that since 2020 59% of the **documented** use of force incidents result in a CCRB

complaint, including **67%** of complaints in 2024 alone.[5]

39.    It is not surprising that the ratio of complaints to incidents is rising, given that

that the Commissioner has been "burying" cases of NYPD officers charged with choking,

beating, and tasing citizens.[6]  NYPD Commissioner Edward Caban has an authority called

"retention" to prevent NYPD officers accused of substantiated misconduct from facing

public disciplinary trials.[7]  Commissioner Caban has prevented 54 officers from going to trial

in one calendar year,  a close to 700% increase from his predecessor.[8]

---

[1] https://app.powerbigov.us/view?r=eyJrIjoiOGNhMjVhYTctMjk3Ny00MTZjLTliNDAtY2M2ZT
Q5YWI3N2ViIiwidCI6IjJiOWY1N2ViLTc4ZDEtNDZmYi1iZTgzLWEyYWZkZDdjNjA0MyJ9
[2] *Id.*
[3] https://www.nyc.gov/site/ccrb/policy/data-transparency-initiative-
allegations.page#allegations_type
[4] *Id*.
[5] *Id*.
[6] https://www.propublica.org/article/nypd-commissioner-edward-caban-police-discipline-
retention-eric-adams
[7] *Id*.
[8] *Id*.

40.     Further, the Commissioner is delaying cases by failing to notify officers that charges have been filed against them, potentially delaying cases indefinitely.[9]

41.     Finally, this Commissioner has overturned disciplinary action thirty times in the past year, setting aside harsher and more severe punishments for more lenient, or in some cases, no sentencing in at all.[10]

42.     However, Commissioner Saban's predecessor was not much better. In 2022, prior Commissioner Keechant Sewell declined to discipline more than 340 officers that had perpetrated misconduct.[11] Commissioner Sewell punished officers at far lower rates than her predecessors, where prior Commissioner James O'Neil imposed discipline in 83 percent of cases and Commissioner Dermont Shea impose discipline in 80 percent.[12]

43.     Moreover, in 2023, more than two and half years after the City's historically violent response to citizens exercising their First Amendment rights, only 12 of the 89 NYPD officers charged with serious misconduct have been disciplined.[13]

44.     These Commissioner's conduct is reflective of an over twenty year trend where the City and NYPD Administration has failed to discipline or hold accountable officer misconduct in any manner.

---

[9] *Id.*
[10] *Id.*
[11] https://www.nytimes.com/2023/03/16/nyregion/nypd-discipline-recommendations.html

[12] *Id.*
[13] https://www.thecity.nyc/2023/02/06/nypd-misconduct-blm-george-floyd/

45.    From 2000 to 2021, according to a NYCLU report, the CCRB received 180,700 complaints against members of the NYPD.[14]  Of those complaints, only 4,283 received some type of discipline and only one percent of all cases received discipline considered serious.[15]

46.    From 2014 to 2020, the NYPD reduced or rejected CCRB recommendations for stiff discipline of officers in about 71 percent of the 6,900 serious misconduct charges.[16]

47.    Taken in totality, the assault against Ms. Jackson by NYPD Officers cannot be considered not an isolated incident.  It is due to the deliberate indifference by the City of New York against the culture of violence and perpetual use of excessive force by members of the NYPD.

### Claim II: Violations of the New York State Constitution
*Against All Defendants*

49.    Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

50.    Such conduct breached the protections guaranteed to plaintiff by the New York State Constitution, including but not limited to, Article 1, §§ 1, 6, 8, 9, 11, and 12, and including the following rights:

a.    freedom from unreasonable search and seizure of his person and property;

b.    freedom from arrest without probable cause;

---

[14] https://www.nyclu.org/data/nypd-discipline-numbers
[15] *Id*.
[16] https://www.nytimes.com/2023/03/16/nyregion/nypd-discipline-recommendations.html

c.      freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which wrongful detention plaintiff was aware and did not consent;

d.      freedom from the lodging of false charges against him by police officers and prosecutors, including on information and belief, by some or all of the individual defendants; and

e.      freedom from deprivation of liberty without due process of law.

51.      As a direct and proximate result of defendants' deprivations of Plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, Plaintiff suffered physical, economic and emotional injuries, as well as a deprivation of liberty.

52.      As a result of the above tortious conduct, Plaintiff was caused to suffer physical, economic, and emotional injuries, as well as a deprivation of liberty.

53.      As a result of the above unconstitutional conduct, the City of New York is liable for the conduct of the Individual Defendants and any damages they caused under the doctrine of *respondeat superior*.

**Claim III: Failure To Intervene Under 42 U.S.C. § 1983 & AC § 8-802**
*Against Defendant John Does 1-7 & City of New York & Kings County District Attorney's Office*

54.      Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

55.    Those defendants that were present but did not actively participate in the aforementioned unlawful conduct, had a duty to intervene and prevent such conduct and failed to intervene.

56.    Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

57.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### Claim IV: Excessive Force Under 42 USC § 1983 & AC § 8-802
*Against John Does 1-8 & City of New York & Kings County District Attorney's Office*

58.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

59.    In detaining plaintiff, Defendant John Does used excessive force.

60.    The force used was unreasonable and excessive.

61.    As a result of the unreasonable and excessive force, plaintiff suffered injuries and substantial pain.

62.    Defendants' use of force was the proximate factor in causing the harm to plaintiff.

63.    As a result of the foregoing, plaintiff was caused to suffer physical, psychological and emotional injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, and loss of freedom.

### Claim V: False Arrest Under U.S.C. § 1983 & AC § 8-802
*Against John Does, City of New York, & Kings County District Attorney's Office*

11

64.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

65.    That on or about January 24, 2023 and at all times hereinafter mentioned and upon information and belief, Defendants, without justification and without probable cause, imprisoned the Plaintiff.

66.    That the Defendants acting under the color of the law, intentionally confined the Plaintiff against his will and said confinement was not privileged.

67.    As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer psychological and emotional injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to their reputation and their standing within their community.

68.    As a result of Defendant's impermissible conduct, Plaintiff demand judgment against Defendant's in a sum of money to be determined at trial.

[REMAINDER INTENTIONALLY LEFT BLANK]

**WHEREFORE**, Plaintiffs demand the following relief against Defendants:

    a. Compensatory damages in an amount to be determined at trial;
    b. Punitive Damages;
    c. Reasonable costs and attorneys' fees under 42 U.S.C. § 1988;
    d. Pre- and post-judgment interest to the fullest extent permitted by law; and
    e. Any additional relief the Court deems just and proper.

       DATED: this 31st Day of August 2024          New York, New York

Yours, etc.

Lord Law Group PLLC

_____
Masai I. Lord, Esq.
14 Wall St., Ste 1603
New York, NY 10279
718-701-1002

*Counsel for Plaintiff Amanda Jackson*

13